## J. K. GRAVES, Appellant, v. THE KEY CITY ~GAS COMPANY.

**Construction of Writing.** An agreement to furnish gas to a resident,
1   for twenty years, for "ordinary purposes," covers gas for a cook
    stove, though gas stoves were not in use when the contract was
    made.

SAME.  Such an agreement entitles plaintiff to all gas reasonably nec-
    essary for the purposes in view of the contracting parties. It
2   does not, on the one hand, limit him to a specified quantity or
    amounts used by large consumers, nor on the other, allow him to
    commit waste. Facts reviewed and maximum amount fixed.

**Rights Under Contract:** GARNISHMENT.  That a corporation which has
    agreed to furnish gas to plaintiff for a consideration received, is
3   garnished as a debtor of plaintiff, is no defense to his action to
    enjoin it from cutting off his gas supply.

*Appeal from Dubuque District Court.*—HON. JOHN J. NEY, Judge.

THURSDAY, JANUARY 24, 1895.

Plaintiff brings this action in equity, under a contract set out, to enjoin the defendant from obstructing or cutting off the supply of gas to plaintiff's residence and street lamps. The court found that plaintiff is entitled to one hundred thousand cubic feet of gas per annum, in addition to that properly required for the street lamps, during the continuance of said contract, and decreed as follows: "It is therefore ordered, adjudged, and decreed that defendant be, and is hereby, required to furnish such gas to plaintiff, and that defendant is hereby enjoined and restrained from obstructing or cutting off said supply of gas during continuance of said contract, so long as the total consumption, exclusive of said supply for the two street lamps,

does not exceed said amount of one hundred thousand cubic feet of gas in any one year dating from this decree, to all of which both parties except.   Judgment against defendant for costs, taxed at $——."   Plaintiff appeals. —*Modified* and affirmed.

*R. W. Stewart* and *Robert Bonson* for appellant.

*Powers, Lacy & Brown* for appellee.

Given, C. J.—I.   On and prior to June 30, 1880, plaintiff, then and ever since a resident of the city of Dubuque, was the owner of a gas plant in said city, known as the "Key City Gaslight Company," from which said city, including plaintiff's residence, was supplied with gas.   He sold said plant to the defendant company, a corporation organized for the purpose of purchasing and operating the same.   As a part of the consideration, defendant, by a resolution adopted by its board of directors, agreed as follows:   "Be it resolved, that in consideration of the sum of one dollar, to us in hand paid by J. K. Graves, and as part consideration of purchase made by us of the gas works and property of the Key City Gaslight Company, we hereby consent to and agree that all gas for ordinary purposes, including gas log in library, hereafter used in the present residence and out-buildings of said Graves, and including two street lamps in front of said residence on Fenelon Place, city of Dubuque, shall be free of cost for a period not exceeding twenty years, provided said premises are occupied by said Graves or his family as their residence.   John Bell, President.   A. McArthur, Sec. Key City Gas Co."   Defendant continued to furnish the gas used by plaintiff in his residence and street lamps without complaint until April, 1890, when it complained to plaintiff that he was using gas in excess of what he was

entitled to, and threatened to cut off the supply, but desisted on plaintiff's saying that he "thought he could reduce it;" "that he would try and have it used more economically." On November 12, 1890, defendant notified plaintiff that his consumption of gas was excessive, and that, unless it was reduced, the company would cut off the gas. Thereupon plaintiff commenced this action to enjoin the defendant from cutting off the gas, and on hearing, in December, 1890, temporary injunction was denied. Defendant continued to furnish gas up to January 15, 1891, when the supply was disconnected and cut off from plaintiff's premises, on the ground that his use was excessive. Plaintiff filed a supplemental petition, alleging that the gas had been cut off, and asking that defendant be restrained from preventing plaintiff from removing the obstructions to the flow of gas to his premises. On a hearing, February 3, 1891, this relief was denied; and, on plaintiff's appeal, this action of the trial court was reversed, and the case remanded, "for the allowance of a temporary injunction and other proceedings in harmony with this opinion." 83 Iowa, 714, 50 N. W. Rep. 283. On final hearing, decree was entered as stated above.

II. The first question discussed is whether the words "all gas for ordinary purposes," as found in said resolution, were intended as a limitation upon the appliances and quantity to be used, or only upon the appliances. This intention we are to ascertain from the language employed, construed in the light of the subject of the contract and the surrounding circumstances. The language we have quoted. The subject-matter is the supplying of gas to plaintiff for use in his street lamps and residence, and the surrounding circumstances are in substance these: Plaintiff's residence is large, having thirty-two rooms, and so constructed, with basement, dining room, etc., as to require

an unusually large supply of gas to light it.   His family
was such that a number of different rooms were occu-
pied and lighted in the evenings.  · In addition to the
gas used for lighting, he had two street lamps in front
of his residence, a small heater in the dining room, and
a gas log in the library.   This gas log was used a large
part of the time in cold and chilly or damp weather at
its full capacity, and consumed nearly sixty cubic feet
per hour.   It is manifest that, at and for years prior
to the making of this contract, plaintiff was a large con-
sumer of the gas manufactured at his works.   Several
of the men employed in connection with the works con-
tinued in their positions after the sale to the defendant;
several who became active in the organization of the
defendant company, and, as officers in its management,
were familiar with the size of plaintiff's residence, the
appliances being used by the plaintiff, the purposes for
which used, and that a large amount was being used.
There being no meter attached, the amount consumed
could only be known in a general way.   We have much
discussion as to what defendant's officers knew as to
the amount of gas consumed by plaintiff at and prior
to the contract, and how far defendant should be bound
thereby.   We are in no doubt but those who made this
agreement on the part of the defendant knew of the
appliances being used by the plaintiff, the purposes for
which he used gas, and that he was a large consumer.
It was under these circumstances and with this knowl-
edge that the defendant agreed to furnish plaintiff with
"all gas for ordinary purposes," including the gas log
and street lamps.   Aside from the lamps and log, the
purposes contemplated were ordinary domestic pur-
poses.   Therefore it must have been contemplated that
plaintiff might use any appliance used in consuming
gas for ordinary domestic purposes.   The contract had
twenty years to run.   Therefore it was not intended to

limit plaintiff to the appliances then in use, but to permit the use of any that might thereafter be adapted to the use of gas for ordinary domestic purposes. The limitation is as to the purposes, and not to the means by which the gas is applied to the authorized purposes. Plaintiff tried the experiment of generating steam by gas to heat his house. He concedes that this was not an ordinary domestic purpose, and does not claim the right to such use under the contract. The experiment failed, and after a short trial was abandoned. He purchased a gas cook stove from the defendant, and thereafter used it. If the use of such stoves was not common at the time the contract was made, it certainly became so, and they were thereafter in ordinary use for domestic purposes by consumers of gas. . We think the use of the cook stove was one of the ordinary purposes for which plaintiff was entitled to be supplied with gas, and that, aside from the experiment of making steam, he did not use gas by any other than ordinary appliances, nor for other than ordinary domestic purposes, unless it was in the use of the gas log and street lamps, which are expressly authorized.

III. It was surely not intended to limit plaintiff's consumption of gas to a certain number of cubic feet, nor to the amount consumed by any one or more other consumers. If either was intended, it would have been so written in the contract. It is evident that, at the time the contract was made, the intention and expectation of both parties was that plaintiff would continue to use his street lamps, his gas log, and gas for ordinary purposes in his house in the future as he had in the past. It is certainly not contemplated, however, that he had or would permit the gas supplied to his premises to be wasted. No meter was attached in plaintiff's house until in 1889, except on one occasion, for a few hours; hence we have no means of

determining accurately the amount of gas consumed prior to the contract.    Except in the experiment to make steam, which was soon abandoned, and the use of the cook stove, there was no change in the appliances nor the purposes for which gas was used.    If the same economy was observed, this fact would indicate that the consumption before the contract and before the meter was attached was substantially the same as that shown by the meter.    Prior to the contract the plaintiff was consuming all the gas he needed for ordinary purposes, including his gas log and two street lamps, and this he is entitled to under the contract; but he is entitled to none for extraordinary purposes, whether it be unreasonable and unnecessary consumption or other manner of waste.    In view of the evidence as to the amounts consumed by others somewhat similarly situated, we do not believe that plaintiff's consumption, prior to the contract, was near what was shown by the meter.    His consumption, as shown by the meter, during the year ending July 1, 1890, was three hundred and eight thousand five hundred and one cubic feet; while that of the next largest consumer, with a similar demand, was only sixty-four thousand.    Twenty-six of defendant's largest consumers ran from eighteen to sixty-four thousand cubic feet during said year. Because of the size and arrangement of plaintiff's house, the manner in which it was occupied, and the use that he was entitled to make of the gas log and street lamps, we are satisfied that it required a much larger supply of gas for his premises than for any other of defendant's consumers.    We do not think, however, that it required three hundred and eight thousand five hundred and one cubic feet a year, nor that plaintiff consumed that amount prior to the contract.    There must have been a want of reasonable economy on the part of

plaintiff's servants and others controlling the consumption of gas in his house in the later years to have run it to such an extraordinary amount. Though used with liberality prior to the contract, it was at the cost to plaintiff of its manufacture, but this incentive to economy did not exist under the contract. While the contract is not for any specific amount of gas, and while plaintiff is entitled to the full measure of all that he may need for the purposes named, it is necessary that an amount be determined beyond which he is not entitled, so that the rights of the parties may be definitely fixed, and causes for dispute removed. That the consumption of 1890 was extravagant we think is fairly shown. Therefore we cannot accept it as the measure to which plaintiff is entitled. To fix an amount less than he is entitled to, and thereby leave him unsupplied for any part of the year, would be to deny to him the full benefit of his contract; but it does not follow that, because an amount is fixed greater than he needs, he is privileged to waste the supply. In view of these facts, and of what we think plaintiff's consumption was before the contract, and what his reasonable demand is now, we conclude that the limit fixed by the District Court should be increased to one hundred and fifty thousand cubic feet per annum. This insures to plaintiff all that he is entitled to, and leaves defendant its remedy for any consumption over that amount, and for any waste of gas that plaintiff may commit or permit.

IV. Pending this litigation, defendant was garnished as a supposed debtor to plaintiff, and this garnishment is urged as a defense. We held on the former appeal that this garnishment is no ground for refusing plaintiff relief. The judgment and decree of the District Court are modified so far as to fix the amount of gas to be furnished to plaint-

iff at one hundred and fifty thousand cubic feet per annum, and affirmed in all other respects.—*Modified and affirmed.*